# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-18-00329-CV
---

**V. N. G., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

---
**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
NO. D-1-FM-16-005782, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING**
---

## M E M O R A N D U M   O P I N I O N

V.N.G. appeals from the trial court's order terminating her parent-child relationship with her children E.G., D.G., and R.E.G.[1]  In three appellate issues, V.N.G. contends that the evidence is legally and factually insufficient to support the trial court's termination order and that the court should have issued findings of fact and conclusions of law.  We will affirm the trial court's order terminating V.N.G.'s parental rights.

### DISCUSSION

**Best-Interest Finding**

To terminate the parent-child relationship, a court must find by clear and convincing evidence that: (1) the parent has committed one of the enumerated statutory grounds for termination

---

[1] For the sake of privacy, we refer to the appellant and children by their initials.  *See* Tex. Fam. Code § 109.002(d).

and (2) it is in the child's best interest to terminate the parent's rights.  Tex. Fam. Code § 161.001(b).

In her first two appellate issues, V.N.G. contends that the evidence is legally and factually insufficient

to support the trial court's best-interest finding.[2] *See id.* § 161.001(b)(2).  When reviewing the legal

sufficiency of the evidence in a parental rights termination case, we consider all the evidence in the

light most favorable to the trial court's finding and determine whether a reasonable factfinder could

have formed a firm belief or conviction that its finding was true.  *See In re J.F.C.*, 96 S.W.3d 256,

266 (Tex. 2002); *see also In re K.M.L.*, 443 S.W.3d 101, 112 (Tex. 2014).  When reviewing the

factual sufficiency of the evidence, we view all of the evidence in a neutral light and determine

whether a reasonable factfinder could form a firm belief or conviction that a given finding was true.

*In re C.H.*, 89 S.W.3d 17, 18–19 (Tex. 2002).  We assume that the factfinder resolved disputed

facts in favor of its finding if a reasonable person could do so, and we disregard evidence that a

reasonable factfinder could have disbelieved or found incredible.  *In re J.F.C.*, 96 S.W.3d at 266.

Evidence is factually insufficient only if a reasonable factfinder could not have resolved the disputed

evidence in favor of its finding and if that disputed evidence is so significant that the factfinder could

not reasonably have formed a firm belief or conviction that its finding was true.  *Id.*

We assess the best interest of the child using a non-exhaustive list of factors.  *See In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam).  These factors include (1) the child's wishes, (2) the child's emotional and physical needs now and in the future, (3) emotional or physical danger to the child now and in the future, (4) the parenting abilities of the parties seeking custody,

---

[2] On appeal, V.N.G. does not challenge the trial court's finding that she committed one of the enumerated statutory grounds for termination.  *See id.* § 161.001(b)(1).

2

(5) programs available to help those parties, (6) plans for the child by the parties seeking custody, (7) the stability of the proposed placement, (8) the acts or omissions of the parent which indicate that the existing parent-child relationship is not proper, and (9) any excuses for the acts or omissions of the parent. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *L.R. v. Texas Dep't of Family & Protective Servs.*, No. 03-18-00125-CV, 2018 WL 3059959, at *1 (Tex. App.—Austin June 21, 2018, no pet.) (mem. op.). The Department need not prove all nine *Holley* factors as a "condition precedent" to termination, and the absence of some factors does not bar the factfinder from determining that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d at 27. "While no one factor is controlling, the presence of a single factor may be adequate in a particular situation to support a finding that termination is in the child's best interest." *D.M. v. Texas Dep't of Family & Protective Servs.*, No. 03-17-00137-CV, 2017 WL 2628949, at *4 (Tex. App.—Austin June 13, 2017, no pet.) (mem. op.). "The need for permanence is the paramount consideration when determining a child's present and future physical and emotional needs." *L.R.*, 2018 WL 3059959, at *1; *see In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("The goal of establishing a stable, permanent home for a child is a compelling government interest.").

The trial court was presented with evidence of the following:

- In 2013, V.N.G. left two of her children unattended in a car and someone called the police. An officer found the children in the unlocked car, which was "full of trash" and had only "one booster seat" although there were two children. V.N.G. told the officer that she had been away "for less than five minutes," and she "didn't seem all that concerned," as though the incident were "just kind of [an] every day occurrence."

- In 2015, the Department received notice that V.N.G. was dropping two of her children off at a bus stop early in the morning when it was still dark outside

3

and leaving them unattended. The children were about 4 and 5 years old at the time.

- In 2016, V.N.G. left all three children alone in an apartment at around 4 a.m. to go see a man in Buda. V.N.G. testified at trial that she asked a male neighbor to watch the children, but she admitted that there was no adult in the apartment when she left the children alone. She further testified that she needed "a break" from the children and that she was gone until 1:00 or 2:00 the following afternoon. When she arrived home, police officers were waiting for her. One of the officers testified that when the officers arrived, they found one child playing alone outside. The officer further testified that the youngest child, who was about a year old, was in a crib unattended, "constantly crying" and with a "heavy," "soaked" diaper. In her testimony, V.N.G. admitted that she lied to the officers by telling them that she had to leave for an emergency to see her sister and that she had left the children with her brother. V.N.G. was later charged with child abandonment, a state jail felony, and was on deferred adjudication community supervision for that offense at the time of trial.

- About five months before trial, V.N.G. left her children with a woman she met at a grocery store while V.N.G. had her "eyebrows done." The children later complained to their foster parents and to the Department that the woman was "mean to them." At trial, V.N.G. could not recall the woman's last name and admitted that she left the children "in an unsafe situation."

- The children's father and V.N.G.'s husband, R.G., repeatedly abused V.N.G. On one occasion, he tried to strangle her. Another time, he assaulted her after using "ice, crystal meth and weed"; the children were present but asleep during the assault. V.N.G. admitted at trial that she allowed R.G. to be around the children even though she knew that he used cocaine. She further admitted that she allowed R.G. to be around the children although he had threatened her with a gun on multiple occasions. V.N.G. testified that the children had witnessed domestic violence involving R.G. more than five times—she testified, "They've seen it a lot of times." She confirmed that, during one incident, R.G. struck one of the children. On another occasion, R.G. struck V.N.G. in her stomach and she later suffered a miscarriage.

- Although V.N.G. told the Department that she had stopped communicating with R.G., in fact she continued to communicate with R.G. during the pendency of this case while he was incarcerated. The Department presented evidence of over 700 phone calls between V.N.G. and R.G. while R.G. was in the county jail. V.N.G. also gave R.G. her entire income tax refund of $1,600 so that he could make bail. She never filed for divorce from R.G.,

4

although R.G. filed for divorce before this trial began. As one witness testified concerning the phone conversations between V.N.G. and R.G., "He asked many times over the course of those phone calls for a divorce and she said no and when asked why she just reiterated because she loved him and she wanted to be with him."

- V.N.G. also suffered domestic violence from a boyfriend. After one incident that occurred in a vehicle when her children were present, she told officers that the boyfriend had threatened her with a gun, that he threatened to kill her, and that he used marihuana and cocaine. She also admitted at trial that she allowed the boyfriend to be around her children despite knowing that he used cocaine.

- Although V.N.G. had a job at the time of trial, she had only had that job for about a week. Her employment had been unstable leading up to the trial. As V.N.G. testified, she had had "[a] lot" of jobs in the past year.

- At the time of trial, V.N.G.'s driver's license had been suspended for "[p]robably four" years because of unpaid fines.

- While caring for two of the children, V.N.G. tried to kill herself by consuming rat poison.

- At trial, V.N.G. praised the children's foster parents. She testified that the foster parents love the children and care for V.N.G. too.

- The foster mother testified that she is a counselor with "the Safe Alliance." She further testified that she had years of experience working with children and others who had been exposed to domestic violence.

It is true that the trial court also heard evidence that V.N.G. loves her children and that they love her, that she completed some of her required services, and that she was making progress in therapy. However, the evidence outlined above shows that V.N.G. repeatedly placed her children in dangerous situations by leaving them alone or by allowing dangerous people to be around them. The evidence also shows that V.N.G. was untruthful to authorities about her endangering actions.

5

In light of the entire record before us,[3] we conclude that the trial court could have reasonably formed a firm belief or conviction that it is in the children's best interest for V.N.G.'s parental rights to be terminated, that the court could have reasonably resolved disputed evidence in favor of its finding, and that any disputed evidence is not so significant that the court could not reasonably have formed a firm belief or conviction that its finding was true. Therefore, we conclude that the evidence is legally and factually sufficient to support the trial court's finding that the termination of V.N.G.'s parental rights is in the children's best interest. Accordingly, we overrule V.N.G.'s first two appellate issues.

**Findings of Fact and Conclusions of Law**

In her third appellate issue, V.N.G. contends that "[t]he trial court should have issued Findings of Fact and Conclusions of Law" and that, "in the absence of Findings of Fact and Conclusions of Law, it's difficult to know why the Appellant's rights were terminated." However, V.N.G.'s brief does not explain the legal significance of this purported error—it does not provide any standard of review, conduct any harm analysis, or explain how the alleged failure to issue findings of fact and conclusions of law could entitle her to reversal or any other relief. In addition, the brief does not cite legal authority to explain the implications of the alleged error. Therefore, we conclude that this issue is inadequately briefed. *See* Tex. R. App. P. 38.1(i). Moreover, the record

---

[3] Although we have considered the entire record, because this is a memorandum opinion affirming the trial court's termination order, we do not exhaustively detail the evidence. *See* Tex. R. App. P. 47.4 ("If the issues are settled, the court should write a brief memorandum opinion no longer than necessary to advise the parties of the court's decision and the basic reasons for it."); *In re A.B.*, 437 S.W.3d 498, 507 (Tex. 2014) (holding courts of appeals need not detail the evidence when affirming termination findings).

6

before us indicates that V.N.G.'s request for findings of fact and conclusions of law was untimely filed. The trial court signed its termination order on April 17, 2018, and V.N.G. filed her request on May 16, 2018, more than 20 days later. *See* Tex. R. Civ. P. 296 (providing that requests for findings of fact and conclusions of law "shall be filed within twenty days after judgment is signed with the clerk of the court"). Accordingly, we overrule V.N.G.'s third appellate issue.

## CONCLUSION

We affirm the trial court's order terminating V.N.G.'s parental rights.

_____

Scott K. Field, Justice

Before Chief Justice Rose, Justices Field and Bourland

Affirmed

Filed:   October 17, 2018

7